## DEISTER CONCENTRATOR COMPANY v. DEISTER MACHINE COMPANY ET AL.

[No. 8,979. Filed May 22, 1916. Rehearing denied December 22, 1916.]

1. TRADE-MARKS AND TRADE-NAMES.—*Unfair Competition.—Use of Surname in Business Enterprises.*—A person may make a fair and reasonable use of his own name in commercial pursuits, and in so doing he cannot be held liable for incidental damages to a

Deister Concentrator Co. v. Deister Mach. Co.—63 Ind. App. 412.

competitor in business using the same name, but he must be honest in such use and not injure the good will of a rival by palming off his goods as that of such rival; nor can he employ his name fraudulently so as to appropriate the good will of an established business of his competitor. p. 418.

2. TRADE-MARKS AND TRADE-NAMES.—*Name of Inventor.—Use by Rival Companies.*—Where one Deister, an inventor of certain mining machinery called a concentrator, after organizing a company known as the Deister Concentrator Company and assigning to it his patents and giving it the right to manufacture and sell machinery made thereunder, disposed of his interest in such concern but was not by contract or otherwise precluded thereafter from the use of his name in connection with another business, injunction will not issue at the instance of such company to restrain the mere use of the name "Deister" by a new corporation, known as the Deister Machine Company, subsequently organized by the inventor to fabricate and dispose of his improved patented concentrator. p. 419.

3. TRADE-MARKS AND TRADE-NAMES.—*Unfair Competition.*—Nothing less than conduct tending to pass off one man's merchandise or business as that of another will constitute unfair competition, the essence of the wrong being the sale of goods of one manufacturer for those of a competitor. p. 419.

4. TRADE-MARKS AND TRADE-NAMES.—*Unfair Competition.—Intent.*—In order to constitute unfair competition by conduct tending to pass off the goods of one person for that of another, it is not necessary that one should take some affirmative action in that respect, or that he should intend to sell his goods for those of his rival, as actual deception is not necessary; for, if the name under which he disposes of his products, together with the method of disposing of the same, is manifestly liable to deceive purchasers, the result would be accomplished. p. 420.

5. TRADE-MARKS AND TRADE-NAMES.—*Unfair Competition.—Deception.—Knowledge of Purchasers.*—The class of persons who buy the particular kind of articles manufactured, such as servants or children, upon the one hand, or persons skilled in the particular trade, upon the other, must be considered in determining the question of probable deception. p. 421.

6. TRADE-MARKS AND TRADE-NAMES.—*Unfair Competition.—Use of Name.—Injunctive Relief.—When Granted.*—Where one Deister, an inventor and patentee of certain mining machinery called a concentrator, organized a company known as the Deister Concentrator Company, to manufacture and sell such machinery, and assigned his patents to it, retaining the right to manufacture the concentrators for sale in foreign countries, and thereafter disposed of his interest in the company, with no restrictions as

to his right to again engage in the manufacture and sale of mining machinery under the name "Deister" or the use of that name in connection therewith, injunction for unfair competition will not issue at the instance of such company to restrain a corporation, known as the Deister Machine Company, subsequently organized by the inventor to manufacture his concentrators under new patents in this country and under the old patents for the foreign market, from using the name "Deister" in the title of the corporation or upon its manufactured product, where the machines made under the new patents were easily distinguished from the type made under the old patents, and the concentrators were sold to those familiar with mining machinery, thereby diminishing the likelihood of purchasers being deceived, and in view of the fact that the new company's advertisements contained the words, "Note carefully the new name," and its catalogues were of a different color from those circulated by the older company. p. 421.

7. TRADE-MARKS AND TRADE-NAMES.—*Unfair Competition.—Resemblance Between Devices.—Use of Name.—Questions of Fact.*—No inflexible rule can be formulated as to what conduct will constitute unfair competition, and, as the degree of resemblance between the names of articles made and sold, as well as the precaution taken to differentiate one article from another, or the name, is not capable of exact definition, it becomes, from the nature of the case, a question of fact to be determined by the circumstances as they are brought before the court in each particular case. p. 424.

From Dekalb Circuit Court; *Frank M. Powers,* Judge.

Action by the Deister Concentrator Company against the Deister Machine Company and others. From a judgment for defendants, the plaintiffs appeal. *Affirmed.*

*Elmer Leonard, James H. Rose, Fred E. Zollars, Robert S. Taylor* and *Elwin M. Hulse,* for appellant.

*Barrett, Morris & Hoffman,* for appellees.

MORAN, J.—This was a suit by appellant Deister Concentrator Company against Deister Machine Company, Emil Deister, William F. Deister and Charles G. Williams, appellees, seeking injunctive relief and damages for unfair competition in trade. No error is predicated as to the rulings upon the pleadings. Therefore it is sufficient to state that the complaint is in one paragraph, to which was addressed

a general denial and an affirmative paragraph of answer, to which affirmative paragraph of answer a reply in general denial was filed.

The facts were found specially by the court, and conclusions of law stated thereon, which were adverse to the appellant, and from a judgment upon the conclusions of law that appellant take nothing by its suit and that appellees recover costs, an appeal has been taken by appellant, assigning as error the action of the court in stating the conclusions of law on the facts specially found, and in overruling appellant's motion for a new trial.

The facts specially found by the court material to an intelligent presentation of the questions arising thereon may be summarized as follows: Appellee Emil Deister for several years prior to the bringing of this suit had been engaged in designing a machine called a concentrator for the separation of gold, silver, copper, and other minerals from foreign substances, which, in general appearance, resembles a wooden table inclosed on three sides, with retaining boards, and when in operation has a vibrating movement by which the minerals, on account of their specific gravity being greater than that of foreign substances accompanying the same, drop into riffles or pools in the table and the foreign substance or refuse is discharged at the lower inclination of the table; that prior to May 21, 1906, he had obtained certain patents from the United States government, and on that date incorporated appellant company with a capital of $200,000 for the purpose of manufacturing and selling such machinery, the patents of which he assigned to the company in consideration of fifty-one per cent. of the stock, retaining the rights to manufacture the same in the United States for sale in foreign countries; one-fourth of the stock was assigned to William H. Bensman and Walter G. Burns, who had rendered him valuable assistance financially; the balance of the stock other than a small amount that had been issued to secure additional funds was

held as treasury stock and thereafter sold; appellee Emil Deister through his inventive genius designed new and valuable mining machinery after the incorporation of the company, and assigned the patents therefor to the company without further consideration; by a process of advertising in trade journals and catalogues, the business developed so that on December 15, 1911, the company had transacted business to the amount of $500,000; the numerous patents all bore in some manner the name "Deister," so that the name became a valuable property right; on account of a dissension that arose between appellee Emil Deister and other stockholders, he and his brother, appellee William F. Deister, sold all of their stock in the company to the other stockholders about the first of the year of 1912, appellee Emil Deister receiving for his stock the sum of $92,000, but neither of the Deister brothers were in any way restricted from using the name "Deister" thereafter, nor from engaging in the manufacture and sale of mining machinery under this name; about the time of the organization of the appellant company, appellee Emil Deister sold the same patents assigned to appellant company to certain parties for the republic of Mexico, and appellant company sold to Emil Deister from time to time a large number of catalogues to be used in advertising his trade beyond the borders of the United States. The Deister Brothers, after withdrawing from appellant company, continued in business at Fort Wayne, selling mining machinery in foreign countries; and on June 15, 1912, they organized a corporation, with a capital stock of $200,000, under the name of "Deister Machine Company," and, in the meantime, they procured new patents for improved mining machinery, which they assigned to the new corporation, which latter company proceeded to manufacture for the trade throughout the world, and proceeded to manufacture machinery under the old patents for the trade beyond the United States and Mexico; the new machine used the name "Deister" in

NOVEMBER TERM, 1916.                417

Deister Concentrator Co. *v.* Deister Mach. Co.—63 Ind. App. 412.

connection with other characters and words, and were made on the same general principle as those manufactured by appellant company, differing, however, as to the construction and method of operation; the business was advertised in trade journals and catalogues, designating wherein the machinery manufactured and sold differed from all other similar machinery for this purpose; the catalogues were of different color than that used by appellant company, and the advertising matter contained nothing to mislead or deceive the public, and bore the further statement, ''Note carefully the new name''; that since the commencement of this suit, appellees have advertised that the ''Deister Machine Company'' was a separate and distinct company from appellant company; that appellee company was organized in good faith, and with no intention of injuring appellant company, and has not attempted to sell any of its machines as the product of appellant company; the machinery made and sold by both companies is not sold through retailers generally, but as a usual thing is sold direct to the operators of mines; slight confusion has resulted in the correspondence of the respective companies, and this was due principally by reason of appellee Emil Deister purchasing catalogues of appellant company, and circulating the same in the Dominion of Canada to advertise his foreign business.

As to the assignment of error based upon the exceptions to the conclusions of law, appellant takes the position that Emil Deister, the patentee of the mining machinery made and sold by it, after selling his stock to the stockholders of appellant company and severing his relations therewith, could not, without making himself amenable to the law, use the name ''Deister'' as a part of the name of the competing company, as this was a part of the corporate name of appellant company; and especially would the law forbid him to do so without sufficient explanation that the two companies were separate corporations, in order that the

418    APPELLATE COURT OF INDIANA,

Deister Concentrator Co. *v.* Deister Mach. Co.—63 Ind. App. 412.

public be not deceived, and further that it was not necessary that fraud was intended or that the public or any person was actually deceived; that if appellant's machinery was imitated by appellees by name, word or symbol, so as to produce confusion in the trade and injure appellant's business, such conduct would constitute unfair competition.

On the other hand, appellees take the position that a person's name is his property, and he has the right to use it in any legitimate way that he sees fit, and that when Emil Deister disposed of his stock, he did not agree that he would not again engage in the invention, manufacture and sale of mining machinery, nor that he would not use the name "Deister" in connection therewith; that the essence of the wrong in unfair competition consists in the sale of goods of one vendor for those of another, and appellees in placing their product upon the market designated the same in such a manner that a purchaser could readily trace the source of its manufacture; that the character of the mining machinery under consideration is such that it is purchased through experts skilled in the business and not at retail, which fact greatly diminishes, if not entirely removes, the likelihood of a purchaser being deceived.

It may be stated as a general proposition that a man's name is his own property and he has the right to its use and enjoyment the same as any other property right,

1.    and so long as such use be a fair and reasonable exercise of such right, he cannot be held liable for incidental damages to a rival in business using the same name, but he must make an honest use of his name, and not injure the good will and reputation of a rival by palming off his goods or business as that of such rival. Nor will he be permitted to use his name fraudulently so as to appropriate the good will of an established business of his competitor. *Pemberthy Injector Co.* v. *Lee* (1899), 120 Mich. 174, 78 N. W. 1074; *Rogers* v. *Rogers* (1885), 53 Conn. 121, 1 Atl. 807, 5 Atl. 675, 55 Am. Rep. 78; 38 Cyc 809;

*Brown Chemical Co.* v. *Meyer* (1890), 139 U. S. 540, 11 Sup. Ct. 625, 35 L. Ed. 247; *Howe Scale Co.* v. *Wyckoff, etc.* (1905), 198 U. S. 117, 25 Sup. Ct. 609, 49 L. E. 972; *International Silver Co.* v. *Rogers* (1907), 72 N. J. Eq. 933, 67 Atl. 105, 129 Am. St. 722; *Waterman Co.* v. *Modern Pen Co.* (1914), 235 U. S. 88, 35 Sup. Ct. 91, 59 L. Ed. 142.

In *Howe Scale Co.* v. *Wyckoff, etc., supra,* Chief Justice Fuller, speaking for the court said: "But it is well-settled that a personal name cannot be exclusively appropriated by any one as against others having a right to use it; and as the name "Remington" is an ordinary family surname, it was manifestly incapable of exclusive appropriation, * * *"; and, in concluding the opinion, said: "We hold that, in the absence of a contract, fraud or estoppel, any man may use his own name, in all legitimate ways, and as a whole or a part of a corporate name."

Without extending our view further on this branch of the case, it must be regarded as settled by the authorities that

2. Emil Deister, not parting with the use of his name by contract or otherwise, when he disposed of his stock in appellant corporation was not precluded thereafter from the use thereof in connection with another business; that is, the mere use of the name "Deister" in the new corporation did not of itself confer any right upon appellant to injunctive relief.

This brings us to the investigation of the main question—whether appellee's conduct in the use of the name "Deister"

3. was such as to constitute unfair competition. It seems to be well settled that nothing less than conduct tending to pass off one man's merchandise or business as that of another will constitute unfair competition within the meaning of the term; the essence of the wrong is the sale of the goods of one manufacturer for those of a competitor. *Standard Paint Co.* v. *Trinidad Asphalt Mfg. Co.* (1911), 220 U. S. 446, 31 Sup. Ct. 456, 55 L. Ed.

420    APPELLATE COURT OF INDIANA,

Deister Concentrator Co. *v.* Deister Mach. Co.—63 Ind. App. 412.

536; *Rathbone, Sard & Co.* v. *Champion Steel Range Co.* (1911), 189 Fed. 26, 110 C. C. A. 596, 37 L. R. A. (N. S.) 258; *Howe Scale Co.* v. *Wyckoff, etc., supra; Goodyear Co.* v. *Goodyear Rubber Co.* (1888), 128 U. S. 598, 9 Sup. Ct. 166, 32 L. Ed. 535; 38 Cyc 784; *Computing Cheese Cutter Co.* v. *Dunn* (1909), 45 Ind. App. 20, 88 N. E. 93; *Hartzler* v. *Goshen, etc., Ladder Co.* (1913), 55 Ind. App. 455, 104 N. E. 34; *International Silver Co.* v. *Rogers, supra.* In the case of *Goodyear Co.* v. *Goodyear Rubber Co., supra,* the court uses the following language: "The case at bar cannot be sustained as one to restrain unfair trade. Relief in such cases is granted only where the defendant, by his marks, signs, labels, or in other ways, represents to the public that the goods sold by him are those manufactured or produced by the plaintiff, thus palming off his goods for those of a different manufacture, to the injury of the plaintiff." And in *Howe Scale Co.* v. *Wyckoff, etc., supra,* it was said: "The essence of the wrong in unfair competition consists in the sale of the goods of one manufacturer or vendor for those of another, and if defendant so conducts its business as not to palm off its goods as those of complainant, the action fails."

Thus the inquiry naturally arises, Did appellees' conduct in disposing of the machinery manufactured by it tend to or have the effect of passing the same to purchasers as the machinery manufactured by appellant? In order that this result be accomplished, it was not necessary that appellees, or either of them, actually take some affirmative action in this respect, or that they, or either of them, so intended, as actual deception was not necessary. If the name under which appellees disposed of their machinery, together with the method of disposing of the same, was manifestly liable to deceive purchasers, the result would be accomplished. *Northwestern Knitting Co.* v. *Garon* (1910), 112 Minn. 321, 128 N. W. 290; *Fuller* v. *Huff* (1900), 104 Fed. 141, 43 C. C. A. 453, 51 L. R. A. 332.

The facts found by the court disclose that the machinery under consideration is of necessity purchased by those skilled in this particular line of business and not by 5. the average consumer of articles of property or commodities sold at retail generally. "The class of persons who buy the particular kind of articles manufactured, such as servants or children, upon the one hand, or persons skilled in the particular trade upon the other, must be considered in determining the question of probable deception." 38 Cyc 777; *W. F. & John Barnes Co.* v. *Vandyck-Churchill Co.* (1913), 207 Fed. 855; *International Silver Co.* v. *Rogers, supra.*

The appellant put its machinery upon the market as manufactured by the Deister Concentrator Company and appellees put their machinery upon the market as 6. manufactured by the Deister Machine Company.

Concluding as we have that Emil Deister was not compelled to abandon his own name (*Howe Scale Co.* v. *Wyckoff, etc., supra*), and had the right to use the same under proper restrictions, it becomes material to examine the steps taken, if any, by appellees to differentiate their machinery from that manufactured and sold by appellant, so that prospective purchasers would have sufficient information to distinguish the machinery sold by appellees from that manufactured and sold by the old concern, and thus avoid unfair competition and confusion.

In *Singer Mfg. Co.* v. *June Mfg. Co.* (1896), 163 U. S. 169, 16 Sup. Ct. 1002, 41 L. Ed. 118, after citing with approval authorities recognizing the right one has to use his own name in business, so long as he does not resort to artifice or deception, the court held: "Where the name is one that has previously thereto come to indicate the source of manufacture of particular devices, the use of such name by another, unaccompanied with any precaution or indication, in itself amounts to an artifice calculated to produce the deception alluded to in the foregoing adjudications."

It was held in *International Silver Co.* v. *Rogers, supra,* that in order to save complainant's rights and to avoid hardship on the defendant that the goods manufactured and sold by the defendant should be stamped "Not the original Rogers," or "Not connected with the original Rogers." In the Waterman Fountain Pen case (*Waterman Co.* v. *Modern Pen Co., supra*), it was held that the defendant should distinguish its goods from the complainant's goods by employing the name "Arthur A. Waterman & Co." and follow the name with "Not connected with L. E. Waterman & Co." Here the right to use the name "Waterman" was recognized by the court under the foregoing restrictions. In each of the cases quoted from and last referred to, the names under consideration had acquired a secondary signification in connection with the product or article manufactured, yet the use of the name itself was not prohibited, but those resorting to the use were required to differentiate the same from that of the original use to which the name was put.

In *Pemberthy Injector Co.* v. *Lee, supra,* where the facts were similar to the facts before us, it was held that Pemberthy, the patentee of the articles manufactured by the company from which he withdrew, had a right to use his name in his own business thereafter without interference, but that such right should be guarded by language sufficiently clear and explicit to notify all persons that his business was not that of his rival's. Upon this proposition the general trend of the adjudicated cases seems to be harmonious; and it will serve no useful purpose to carry the analysis or elucidation of the authorities further. The facts found by the court disclose that appellees took the necessary precaution in the disposition of the mining machinery made by appellee company to notify the trade that it was a separate concern from appellant company, especially in view of the fact that the court found that its articles of property were not disposed of to those likely

to be deceived, and in view of the further finding of the court that when Emil Deister originally sold his patents to appellant company, he reserved the right to the trade in foreign countries, and when he withdrew from the company and sold his stock, there were no restrictions as to his right to again engage in business or against the use of the name "Deister"; and after severing his connection with · appellant company he continued to supply foreign trade as he had theretofore, and after the incorporation of appellee company the advertisements generally as to its business contained the words, "Note carefully the new name," and the catalogues were of different color, and the machinery made under the new patents, which he claimed the right to sell in the United States, were readily distinguishable from the machines made under the original patents; that appellant has sustained no loss or injury on account of the similarity of the corporate names or representations and statements made as to the machines; and since the incorporation of the appellee company it has advertised in catalogues, periodicals and trade journals that the Deister Machine Company was a separate and distinct company from that of the Deister Concentrator Company and not connected therewith.

The · conclusions of law are correct when the law is applied to the facts specially found.

The propositions of law addressed by appellant to the error presented on the conclusions of law, we are asked to consider as being applicable to the error based upon the overruling of the motion for a new trial, on the ground that the decision of the court is not sustained by sufficient evidence and is contrary to law.

We need not reiterate what has been said as to the right under the law of appellees using the name Deister as a part of its corporate name. This leaves for consideration under the assignment of error based on the overruling of the motion for a new trial appellees' conduct in placing

its machinery upon the market in competition with that of its rival concern, which comes to us through a very voluminous record of some 1,400 pages of evidence.

No inflexible rule can be laid down as to what conduct will or will not constitute unfair competition. As to what degree of resemblance between the names or devices

7. of articles made and sold, as well as the precaution taken to differentiate the one article from the other or the name, as the case may be, is not capable of exact definition; thus from the very nature of the case, it becomes a question of fact to be determined by the circumstances as they are brought before the court in each particular case. 38 Cyc 770; *Chas. S. Higgins Co.* v. *Higgins Soap Co.* (1895), 144 N. Y. 462, 39 N. E. 490, 27 L. R. A. 42, 43 Am. St. 769; *Atlas Assurance Co.* v. *Atlas Ins. Co.* (1908), 138 Iowa 228, 112 N. W. 232, 114 N. W. 609, 15 L. R. A. (N. S.) 625, 128 Am. St. 189.

It would unnecessarily incumber the opinion to attempt to review and analyze the evidence. Our examination of the same, however, has been carried to the extent that we are satisfied that the evidence sufficiently supports the judgment of the trial court and the judgment is not contrary to law, when the law heretofore announced is applied to the evidence. From the evidence in the record and the facts found by the court it is disclosed that at the time the court denied appellant the relief sought by it appellees were using the necessary precaution to distinguish the machinery manufactured and offered for sale by it from that of appellant. This disposes of each of the questions presented by appellant's learned counsel. Judgment affirmed.

## On Petition for Rehearing.

Moran, P. J.—Appellant in its brief on petition for rehearing insists that the court held in its original opinion, and erroneously so, that at the time the trial court denied the relief sought by it and rendered its decision appellees

were then using the necessary precaution to distinguish the machinery made and sold by them from the machinery made and sold by appellant, and that this was not sufficient; that if the necessary precaution had not been taken before suit was filed, appellant was entitled to the relief sought, and, further, that if appellant was not entitled to injunctive relief at the time the lower court reached its decision by reason of additional precaution having been taken subsequent to the filing of the complaint, and prior to the decision of the lower court, that this would not preclude appellant from recovering damages for the wrong suffered theretofore.

The complaint alleges generally that appellant wa; damaged by reason of the conduct of appellees, but injunctive relief only is demanded thereby, and under "Points and Authorities" in appellant's brief upon the merits of the cause there is no insistence for damages or for an accounting against appellees. Neither of the five propositions relied upon in the brief are addressed to the question of damages in any manner. There is nothing in appellant's brief on the merits to show that there was any proof offered upon the theory that appellant suffered damages or that an accounting should be had as to profits, if any, that were realized by appellees by reason of using the name they did in disposing of the machinery which they manufactured and sold. It was not intended to hold by the original opinion, nor does it hold, that at the time suit was filed by appellant as against appellees that appellees were not then using the necessary precaution to distinguish the machinery made and sold by them from that made and sold by appellant. From the special finding of facts and conclusions of law announced by the court thereon, it is evident that the decision reached in the court below was on the theory that appellees were taking the necessary precaution at the time suit was filed to distinguish the machinery made and sold by them, and in putting the same

on the market, from that made and sold by appellant, and not upon the steps taken by appellees subsequent to the filing of the suit; nor was the judgment affirmed upon the additional precautions that were taken subsequent to the filing of the suit and before the decision was reached by the trial court.

After suit was brought, however, additional precaution was taken by appellees, as disclosed by the special finding of facts, which, when taken into consideration with the precaution that had been taken before the filing of the suit, clearly informed the public that the machinery manufactured and sold by appellees was different from that manufactured and sold by appellant, and that such additional precaution was proper, and to the end that doubt was removed as to the duty that was owing from appellees to appellant and the public. The original opinion is not subject to the infirmity contended for by appellant in this respect.

Each question raised in the petition for rehearing has been carefully considered, and it is the judgment of the court that a correct conclusion was reached in the original opinion, to which we now adhere. The petition for rehearing is overruled.

NOTE.—Reported in 112 N. E. 906, 114 N. E. 485. Unfair competition: (a) fraudulent intent as a necessary element, 3 Ann. Cas. 32; (b) use of personal or corporate name, 2 Ann. Cas. 415, 16 Ann. Cas. 596. Trade-marks and trade-names, similarity of name as constituting infringement, Ann. Cas. 1915B 327. Right of one selling business and good will to use similar name in competing business, 19 L. R. A. (N. S.) 765. See under (1, 2) 38 Cyc 809, 810, 817, 818; (3) 38 Cyc 756; (4) 38 Cyc 784; (5) 38 Cyc 777; (7) 38 Cyc 779.