JOHN ROBERTS MANUFACTURING COMPANY

v.

UNIVERSITY OF NOTRE DAME DU LAC.

Civ. No. 2113.

United States District Court
N. D. Indiana, South Bend Division.
June 27, 1957.

Kenyon & Kenyon, New York City, Gerald A. Kamm, South Bend, Ind., for plaintiff.

Farabaugh, Chapleau & Roper, Eugene C. Knoblock, South Bend, Ind., for defendant.

PARKINSON, District Judge.

This is an action under the Declaratory Judgment Act, 28 U.S.C.A. §§ 2201, 2202, wherein the defendant filed a counterclaim alleging unfair competition, trade-mark infringement and misbranding with submission to the court for an adjudication of the rights of the parties.

The determinative facts established by the undisputed evidence are that the plaintiff is a Delaware Corporation, with its factory and principal office in Norman, Oklahoma, and the defendant is an Indiana corporation, having been so chartered under the corporate name of "University of Notre Dame Du Lac" by a special Act of the Indiana Legislature in 1844 and thereby empowered, inter alia, to make and execute such rules deemed necessary for its welfare, and has developed into a large university with a campus having over one hundred buildings in St. Joseph County, Indiana and with an enrollment of approximately six thousand students and alumni in excess of twenty-five thousand.

In the year 1930 the defendant had designed, and subsequently had manufactured for sale thereby, an official class ring bearing in bas-relief thereon, for all practical purposes, the defendant's corporate name, "University of Notre Dame", and certain symbols of the defendant which had become identified therewith, which it has continuously sold, from 1931 to 1941 through its controller's office and since 1941 in its bookstore on campus, on a restricted basis, to juniors, seniors and alumni of the defendant only.

In the latter part of 1955 Robert Waugh, the secretary of the plaintiff corporation, with the knowledge and approval of John T. Waugh, the president of the plaintiff corporation, wrote a letter to the bookstore of the defendant on plain stationery which he signed as Bob Waugh with a Post Office box address, and ordered an official class ring of the defendant with a follow-up letter a few weeks later, both of which contained statements and representations admittedly false, and plaintiff received the ring pursuant thereto, took a plaster impression thereof, made the necessary dies for production and, in 1956, commenced the manufacture for sale by Royal Hawaiian Jewelers in South Bend, St. Joseph County, Indiana, of a Notre Dame class ring bearing in bas-relief thereon, for all practical purposes, the defendant's corporate

name of University of Notre Dame, and the same symbols in the same collocation as on the official class ring of the defendant, and the Royal Hawaiian Jewelers have sold some 479 thereof, of which at least 50% have been to sophomores of the defendant.

■ The effect of assuming a name by a corporation under the law of its creation is to exclusively appropriate it as an element of the corporation's existence and the use of the name of a corporation on merchandise manufactured by another for sale in competition with the same type of merchandise of the corporation would not only be actual deception and create actual confusion but would of itself constitute a passing or palming off of its merchandise for that of the corporation, the name of which it is wrongfully using, and would be a most flagrant violation of the law of unfair competition. Accordingly the Indiana trade-mark registrations are completely foreign to a decision of the issue here, and although the applications of the defendant for registration of collective membership marks filed in the United States Patent Office were admitted in evidence with limitations, no consideration has been given by this court thereto whatsoever.

■ This is not the case of a controversy between the plaintiff and another jewelry manufacturer competing in the manufacture and sale of a ring of similar design or with similar insignia thereon and, therefore, the authorities cited have little or no application. However, it may be observed that although the Supreme Court of the United States in the case of Kellogg Co. v. National Biscuit Co., 305 U.S. 111, 59 S.Ct. 109, 83 L.Ed. 73, cited by the plaintiff, held that the use of the term "Shredded Wheat" by Kellogg, the second comer, did not constitute unfair competition, it is self evident that if Kellogg had manufactured and marketed its shredded wheat as "National Biscuit Company Shredded Wheat" it would, without question, have been guilty of unfair competition, and in the case of Sinko v. Snow-Craggs Corporation, 7 Cir., 105

F.2d 450, also cited by plaintiff, although the court held that Cragg, the second comer, was not guilty of unfair competition in marketing a steering wheel knob so resembling Sinko's as to make the two competing articles almost indistinguishable no one would have the temerity to even suggest that our Seventh Circuit Court of Appeals would have so held if Cragg had placed in bas-relief on the bezel of the knob the words "Sinko Mfg. Co.", and in the case of Rader v. Derby, 120 Ind.App. 202, 89 N.E.2d 724, the court did enjoin Derby, the second comer, from using the words "Old Hickory Paddle Company", Rader's trade-name in connection with the fraternity paddles being manufactured and sold by him in competition with those of Rader.

It is the contention of the plaintiff that by marking its rings with the trade-mark "JR", and by prominently featuring its own name in all advertising and sales media reaching members of the student body at Notre Dame, plaintiff has done everything it can reasonably do to "identify its product lest it be mistaken for that of" the defendant. The futility of such reasoning can readily be mirrored in the analyzation of the case of Joe Fink who would form a corporation under the name of Joe Fink, Inc., and, as a second comer, would manufacture and sell an electric toaster on the sides of which in bas-relief it placed the words "General Electric Corporation". Realization is immediate that no matter how prominently Joe Fink, Inc., featured its name in all advertising and sales media and no matter if it placed the initials "JF" all over the toaster confusion could be the only result and there could be no question but that Joe Fink, Inc., was passing or palming off, or attempting to pass or palm off, its toaster as that of General Electric Corporation.

In this case the lack of merit in this contention is far more apparent for the reason that the defendant is not a manufacturer and has its rings made for it by a jewelry manufacturer. Certainly no one is so naive as to think for one moment that a student of the defendant is

going to ascertain who makes the ring before he buys it. Therefore, there exists a situation which is perfect for the plaintiff to place the initials "J.R." on the inside of its ring and prominently feature its own name as the manufacturer in all advertising and sales media and, by subterfuge, pass or palm off its rings as those being manufactured for the defendant and constitutes unfair competition of the rankest kind, from which the defendant has absolutely no means of protection.

Further extension of this opinion is unnecessary other than to say that we hold that the undisputed evidence in this record discloses that the plaintiff fraudulently obtained an official Notre Dame ring from the defendant, copied it including the corporate name of the defendant in bas-relief thereon, and has sold it in competition with the defendant to all students of Notre Dame in violation of the rule of the defendant of restricting sales to juniors, seniors and alumni only, and the evidence clearly paints a vivid picture of a fraudulent design on the part of the plaintiff to purposely engage in unfair competition with the defendant, and equity demands that the plaintiff be enjoined from continuing so to do.

Therefore, the court having considered all of the evidence, the law applicable thereto, and the arguments of counsel, does now make the following

### Findings of Fact

#### 1.

The plaintiff is a corporation organized and existing by virtue of the laws of the State of Delaware, with its factory and principal place of business in Norman, Oklahoma, and is engaged in the business of manufacturing and selling jewelry.

#### 2.

The defendant is an Indiana corporation, having been chartered under the corporate name of University of Notre Dame Du Lac by a special Act of the Indiana Legislature in 1844 with power

thereby given, inter alia, to make and execute such rules deemed necessary for its welfare.

#### 3.

University of Notre Dame is the real body of the corporate name of the defendant, and for all practical purposes, is its corporate name.

#### 4.

The matter in controversy exceeds, exclusive of interest and costs, the sum of $3,000.

#### 5.

There is, among other controversies, an actual controversy in this suit to declare rights and other legal relations of the parties herein within the meaning of the Declaratory Judgment Act (28 U.S.C. § 2201).

#### 6.

The defendant has continuously since the date of its incorporation operated, managed and controlled a university in St. Joseph County, Indiana, with a campus now consisting of approximately 1,000 acres of land and more than 100 buildings, and with an enrollment of approximately 6,000 students, who come from every State of the Union and from approximately 30 foreign countries, and alumni in excess of 25,000, and maintains colleges of liberal arts, science, commerce and engineering and also operates and maintains a law school and a graduate school and is financed through fees charged to students which amount to approximately 70% of the cost of operating the University and the balance of funds required come to the University from various sources, including supplementary income from athletics, operation of the book store and grants from foundations and industries.

#### 7.

The defendant is primarily a boarding university and the majority of the students in attendance live in dormitories on the campus and the defendant exercises disciplinary control over the entire student body and all of its activities.

8.

The defendant by hard effort and at high cost has obtained great prestige.

9.

The main building on the campus of the defendant was constructed in the year 1879 with a large dome which is gilded with gold leaf, can be seen for many miles around and is well known throughout the United States as a symbol of the defendant.

10.

The defendant has a seal which was adopted in approximately the year 1930 which is used extensively on University publications, diplomas and in connection with numerous other activities of the University and the same is well known and symbolic of the defendant.

11.

The defendant has for more than fifty years used as a symbol of the University a monogram consisting of the letter "N" and the letter "D" in a superimposed position.

12.

In the year 1930 the defendant caused to be designed and it approved for manufacture for sale by itself an official Notre Dame ring bearing the symbols of the University, including the words "University of Notre Dame", being the significant part of its corporate name and, for all practical purposes, its full corporate name, a representation of the seal, the Dome and the monogram arranged in a definite collocation.

13.

That continuously from 1931 to the present time the defendant has sold said official Notre Dame rings bearing the corporate name and symbols of the defendant in the approved collocation to alumni and selected students of the University, and during all of said period of time and until manufacture and sale of similar rings by the plaintiff, as hereinafter found, the University has controlled the production and sale of such Notre Dame rings bearing said name and symbols in the approved collocation and has been the sole and exclusive source thereof.

14.

The defendant has expended large sums of money and great effort in popularizing said official ring and promoting the sales thereof and has built up and now enjoys a valuable good will in the sale of said official rings.

15.

The defendant has adopted and long observed a policy of limiting the sales of its official rings to alumni of the University and juniors and seniors enrolled therein, and as a result thereof each wearer of such a ring is identified as being associated with the University as a junior, senior or an alumnus and one entitled to share in and enjoy the prestige of the University, and as a person whose accomplishments reflect his education and training by the University.

16.

By reason of the long continued, exclusive and selected sale of said official Notre Dame ring by the defendant and by reason of the expenditure of money and great effort in promotion of the sales thereof the defendant has built up a valuable and profitable business in the sale of such rings and has created a demand for such rings which has resulted in the purchase of such official Notre Dame ring each year by the majority of the students which the University deems qualified to wear the ring

17.

In addition to the official Notre Dame ring the defendant has for many years sold for use by feminine friends and feminine members of the families of qualified wearers of the official Notre Dame ring a miniature ring bearing the corporate name and symbols of the defendant in the same collocation in which they appear on the official ring.

18.

It has been the policy and rule of the defendant for many years to refuse permission to others to use its corporate

name, official seal and symbols on commercial products sold outside of the University.

19.

In the latter part of 1955 the plaintiff, by false representation, purchased from the defendant an official Notre Dame ring from which it made and took a plaster impression of the design thereof.

20.

In January, 1956 the plaintiff commenced the design and manufacture of what it termed a "new Notre Dame ring" which in truth and in fact is an exact similitude of the official Notre Dame ring, and the said rings so manufactured by the plaintiff bear in bas-relief the name "University of Notre Dame", being the significant part of the corporate name of the defendant and, for all practical purposes, being its corporate name, the University seal, monogram and a representation of the Dome in the same collocation as appears on the official Notre Dame ring which the defendant has sold exclusively since 1930, and the plaintiff is now engaged in the manufacture and sale thereof.

21.

At the time the plaintiff made the design of its copy of the Notre Dame ring which it manufactured commencing in January of 1956 it had in its possession and used an impression of the official Notre Dame ring which it had obtained from the defendant by fraud and deceit and in making and designing said ring it was plaintiff's intention and the plaintiff did make its said ring in the same collocation, same design and with the same symbols as used on the ring of the defendant.

22.

In February of 1956 the plaintiff obtained by and through its agent, Raymond L. Roy of South Bend, Indiana, an official miniature Notre Dame ring sold to said agent in the year 1946 by the defendant and the plaintiff used said miniature ring so obtained for the purpose of designing an identical miniature ring which the plaintiff commenced to manufacture and sell in the spring of 1956.

23.

At the time the plaintiff commenced the sale of its Notre Dame ring it had knowledge (1) that the defendant had prior thereto established a thriving business in the sales of the official Notre Dame ring, (2) that the defendant objected to the commercial use by the plaintiff of its name, seal and other symbols, which objections had been made directly to an officer of the plaintiff corporation, (3) that the defendant was the sole source of supply of the official Notre Dame ring and had been for more than 25 years prior thereto, and (4) that the defendant contended that the manufacture and sale of a Notre Dame ring by the plaintiff was a violation of the rights of the defendant.

24.

In February of 1956 the plaintiff appointed Royal Hawaiian Jewelers of South Bend, Indiana, a partnership consisting of one Raymond L. Roy and his wife, as agent for the sale of its copy of the official Notre Dame ring and said agent commenced the sale in its South Bend, Indiana store of its Notre Dame ring in the spring of 1956 and from such time to and including February of 1957 the plaintiff sold therein 479 of its Notre Dame rings, and subsequent to said date, through said agency, the plaintiff has sold approximately 200 additional rings, all of which said rings were manufactured by plaintiff in Norman, Oklahoma.

25.

That at the time the plaintiff commenced the sale of its copy of the Notre Dame ring plaintiff and its agent knew of the policy of defendant limiting the sale of the official Notre Dame ring to juniors, seniors and alumni, and pursuant thereto plaintiff prepared advertising literature for its Notre Dame ring stating: "The above ring may be purchased only by juniors and seniors enrolled at the University of Notre Dame or by graduates of the University"; but that plaintiff and its agent did not ob-

serve the policy stated on its sales literature and more than fifty percent of plaintiff's rings were sold to sophomores, and plaintiff knew that its agent made such sales to sophomores to increase sales volume of plaintiff's ring.

### 26.

In the sale of copies of the official Notre Dame ring, with the defendant's corporate name, official seal and symbols thereon, the plaintiff has used the name of the defendant and its symbols without its consent in such a manner that it suggests to the purchasers thereof that the defendant is connected in some manner with such sales or it has authorized such sales or derives some benefit therefrom.

### 27.

By reason of the fact that the corporate name and the symbols of the defendant appearing on the ring made by the plaintiff are inherently symbolic of the defendant so that the plaintiff's product is inherently a representation that it is approved by the defendant or authorized by the defendant, and also because the public is aware that the defendant is not a manufacturer of jewelry and purchases its official rings from others, the application of plaintiff's initials "J. R." to its rings and by using its own name as the manufacturer in all advertising and sales media is incapable of avoiding confusion and deception of the public as to the origin of the rings sold by the plaintiff and as to approval thereof by the defendant.

### 28.

The plaintiff in making and selling its copy of the official Notre Dame ring has done so with the design to deceive, and actually does deceive, the public by making it appear that said copied ring originates with or is authorized, sponsored or approved by the defendant and thereby deprives the defendant of a portion of the patronage and profits that it would otherwise realize.

### 29.

The plaintiff is passing or palming off, or is attempting to pass or palm off, its goods as and for the goods of the defendant.

### 30.

The plaintiff is passing or palming off, or is attempting to pass or palm off, the rings manufactured thereby as and for the rings of the defendant.

### 31.

The long continued policy of the defendant of limiting the sale of the official Notre Dame class ring to junior and senior students and to alumni is widely known by large numbers of persons who recognize said official rings as a badge of scholastic accomplishment by the wearer, and the sale by plaintiff of a copy of said ring without the authority or approval of the defendant (a) deprives the defendant of control of said ring as a means of distinguishing the scholastic standing of the wearers thereof, (b) constitutes an usurpation by plaintiff of the right granted to defendant by its charter to certify and apprise the public of the qualifications and accomplishments of its students and alumni, and (c) enables the plaintiff to offer to persons who have not qualified therefor by the standards of the defendant a means for misrepresenting themselves to the public concerning their scholastic accomplishments and their class rank or standing at the University.

### 32.

The plaintiff in manufacturing and in selling and offering to sell its copies of the official Notre Dame ring has placed upon its said rings the name "University of Notre Dame" which said name is the distinguishing part of the corporate name of the defendant, and, for all practical purposes, the corporate name of the defendant, a religious organization.

### 33.

Plaintiff sells its copy of the official Notre Dame ring in direct competition with the defendant and in the same limited and well defined market, and each sale by the plaintiff directly reduces the market of the defendants for the official Notre Dame ring.

Upon the foregoing findings of fact, the court states the following

## Conclusions of Law

### 1.

This court has jurisdiction of the parties to and the subject matter of this action.

### 2.

█ The defendant, an Indiana corporation chartered as such by a special Act of the Indiana Legislature and given a corporate name thereby, has the right to prevent others, from using, without its consent, its corporate name on commercial products, and the plaintiff by using the corporate name of the defendant on rings manufactured and offered for sale thereby in the State of Indiana, without the consent of and in competition with the defendant in selling its rings with its corporate name thereon, has violated the rights of the defendant and has engaged in unfair competition with the defendant.

### 3.

The defendant, an educational institution with high public prestige and a chartered Indiana corporation by special Act of the Indiana Legislature and given a corporate name thereby, has a cognizable interest in and has the right of preventing others, from using its corporate name, or the significant part thereof, together with its official seal and symbols connected with the corporation, without its consent, on commercial products in such a manner that suggests connection with, benefit to, or authorization of by the defendant, and the plaintiff, John Roberts Manufacturing Company, in using the name of the defendant, University of Notre Dame, such being for all practical purposes, its corporate name, together with the official seal of and symbols connected with the defendant, on rings manufactured and offered for sale thereby in the State of Indiana, without the consent of the defendant and over its protest and objection and in direct competition with the defendant in selling its rings with its corporate name thereon, together with the official seal of and symbols connected with the defendant, has violated the rights of the defendant and has engaged in unfair competition with the defendant.

### 4.

The obtaining of an official Notre Dame ring from the defendant by false representation of the plaintiff for its use in designing and making copies thereof constituted a fraud on the defendant.

### 5.

The unauthorized use by the plaintiff of the corporate name of the defendant together with the official seal and identifying symbols connected therewith on the rings manufactured by the plaintiff thereby reproducing a copy of the official ring of the defendant, and the plaintiff in selling and offering its rings for sale is guilty of actual deception and of producing confusion in the minds of the public as to the source of said rings and is guilty of unfair competition.

### 6.

By the unauthorized use of the plaintiff of the corporate name of the defendant together with the official seal and identifying symbols of the defendant in connection therewith on the rings manufactured and sold and being sold by the plaintiff, the plaintiff is passing or palming off, or attempting to pass or palm off, its goods as the goods of the defendant and is thereby guilty of unfair competition.

### 7.

By the unauthorized use of the plaintiff of the corporate name of the defendant together with the official seal and identifying symbols of the defendant in connection therewith on the rings manufactured and sold and being sold by the plaintiff, the plaintiff is passing or palming off, or attempting to pass or palm off, its rings as the rings of the defendant and is thereby guilty of unfair competition.

### 8.

Plaintiff has unfairly competed with the defendant.

## 9.

Plaintiff has unfairly competed with the defendant, is now unfairly competing with the defendant and will, unless enjoined, continue to unfairly compete with the defendant.

## 10.

Plaintiff is guilty of fraud and deceit against the defendant.

## 11.

Defendant is entitled to a permanent injunction against the plaintiff from using the words "University of Notre Dame", being for all practical purposes, the corporate name of the defendant, and the official seal and identifying symbols of the defendant in connection therewith, on any ring manufactured by the plaintiff, and from the sale thereof.

## 12.

Defendant has been damaged by the acts of unfair competition of the plaintiff by reason of loss of sales of its official Notre Dame class ring.

The clerk will enter judgment accordingly.